**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JERRIE HINDS and COURTNIE | : | Case No. 1:20-cv-07692 |
| PATTERSON, individually and on behalf of | : | |
| all others similarly situated, | : | Judge Pallmeyer |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| RESPONDUS, INC. and LEWIS | : | |
| UNIVERSITY, | : | |
| | : | |
| Defendants. | : | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Courtnie Patterson ("Ms. Patterson") ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Respondus, Inc. and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Respondus") and Lewis University and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Lewis") (collectively, "Defendants") and allege as follows:

### INTRODUCTION

1.     Defendant Respondus, Inc. is a software company that develops "online proctoring software" to prevent cheating during online exams.  Priding itself as a "pioneer of online testing applications for nearly two decades," Respondus touts itself as a provider of tools for "learning systems."  *See* RESPONDUS, https://web.respondus.com (last visited January 19, 2021).

2.      In reality, Respondus provides sophisticated digital surveillance technologies to third parties, such as schools that wish to monitor college and high school students during academic assessments.

3.      One of Respondus' automatic proctoring tools called Respondus Monitor captures and stores vast amounts of data, including facial recognition data, facial detection data, recorded patterns of keystrokes, eye monitoring data, gaze monitoring data, and camera and microphone recordings to effectively surveil students taking online exams.

4.      Generally, students have no choice but to use Respondus Monitor if their educational institutions selected Respondus Monitor as the automatic proctoring solution for courses in which they are enrolled.

5.      Additionally, virtually all students who are required to use Respondus' proctoring system download Respondus' software tools on their personal electronic devices while in their personal residences, further invading their privacy.

6.      Defendant Lewis University is a private university located in Romeoville, Illinois. Lewis offers 80 undergraduate and 35 graduate programs to students both in person on its campus and through distance and online learning programs.

7.      In offering online courses to its students, Lewis requires that many student exams be conducted using Respondus Monitor.  Through the Respondus Monitor tool, Lewis unlawfully collects, uses, and discloses students' biometric identifiers and biometric information without the students' written and informed consent.  Lewis also lacks a legally-compliant written public policy establishing a retention schedule and guidelines for destroying biometric identifiers and information and fails to comply with such policy.

8.     Lewis' chosen and exclusive remote proctoring tool, Respondus Monitor,
captures, uses, and stores vast amounts of data, including facial-recognition data, facial detection
data, recorded patterns of keystrokes, eye monitoring data, gaze monitoring data, and camera and
microphone recordings to effectively surveil students taking online exams.  Lewis owns, has
access to, and possesses this data.

9.     Through Respondus Monitor, Lewis collects, captures, and stores everything from
a student's facial features to their voice through a web portal accessed through the student's
personal device.  Using the Respondus Monitor tool, Lewis is able to collect and aggregate
information on all aspects of a student's life.  Indeed, as one director of academic testing told the
*Washington Post*, software programs like Respondus' are akin to "spyware."  *Mass School
Closures in the Wake of the Coronavirus are Driving a New Wave of Student Surveillance*,
Washington Post (Apr. 1, 2020),
https://www.washingtonpost.com/technology/2020/04/01/online-proctoring-college-exams-
coronavirus.  Likewise, an economics professor at Harvard University recently told *Forbes* that
this type of technology involves an inappropriate "level of intrusion."  Sean Lawson, *Are Schools
Forcing Students To Install Spyware That Invades Their Privacy As A Result Of The
Coronavirus Lockdown?*, Forbes (Apr. 24, 2020 6:34 PM),
https://www.forbes.com/sites/seanlawson/2020/04/24/are-schools-forcing-students-to-install-
spyware-that-invades-their-privacy-as-a-result-of-the-coronavirus-lockdown/?sh=1fbe87cb638d
(last visited January 18, 2021)  Relatedly, Duke University has decided not to allow virtual
proctoring at this time, in part because of security concerns.  *Id.*

10.     All the while, students are left in the dark about the vast amount of information
Respondus and their university collects.  Defendants do not disclose or obtain written consent

before collecting, capturing, or storing users' biometric data. Defendants also fail to disclose what they do with that biometric data after collection and do not comply with Illinois' Biometric Information Privacy Act ("BIPA's") retention and destruction requirements for private entities that possess biometric identifiers and biometric information.

11.     It is, therefore, no surprise that there is an outcry among students and faculty about the use of online proctoring software and services. Petitions have sprung up across college campuses nationwide demanding a ban on online proctoring. At major universities, such as the University of Texas at Dallas, California State University Fullerton, the University of Miami, Florida State University, Auburn University, the University of Wisconsin–Madison, and the City University of New York, petitions have gained tens of thousands of student and faculty signatures. At the University of California Santa Barbara, the Faculty Association published a letter demanding that university administration officials rescind its contracts with online-proctoring companies amid concerns these tools could turn the university into "a surveillance tool." *Id*.

12.     Plaintiff brings this action to enforce her legal rights under BIPA and those of the proposed classes of consumers she represents.

13.     BIPA is designed to protect consumers against the threat of irreparable privacy harms, identity theft, and other economic injuries arising from private entities' increasing use of biometric identifiers and information.

14.     In enacting BIPA in 2008, the Illinois Legislature recognized that biometrics are unlike other unique identifiers because they are biologically unique to the individual and cannot be changed. Once compromised, the individual has no recourse. *See* 749 ILCS 14/5.

15.     BIPA protects public welfare, security, and safety by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. *Id*.

16.     BIPA defines biometric identifiers as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

17.     BIPA defines biometric identifiers as "any information, regardless of how it is captured, converted, stored or shared, based on an individual's biometric identifier used to identify an individual." *Id*.

18.     Plaintiff alleges Defendants violated BIPA by, among other things, collecting, capturing, using, storing, and sharing Plaintiff's and class members' biometric identifiers or biometric information without informed written consent.

19.     Defendants violated BIPA's requirement that they maintain, disclose, and follow a retention policy that requires Defendants permanently destroy students' biometric data once the purpose for collecting such data has been satisfied.

20.     Defendants' failure to follow BIPA's express disclosure and consent requirements and failure to comply with the destruction requirements for biometric identifiers was an invasion of Plaintiff's personal rights and the rights of the class members she represents.

21.     Defendants illegally profit from possessing the biometric identifiers or biometric information of Plaintiff and members of the classes she represents.

22.     A class action is the best means of obtaining redress for Defendants' wide-scale BIPA violations and is consistent with the fairness and efficiency goals of class actions.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction over this putative class action lawsuit under 28 U.S.C. § 1332(d).

24. The Court has personal jurisdiction over Respondus because Plaintiff's claims arise out of and relate to Respondus' conduct in the state of Illinois.

25. The Court has personal jurisdiction over Lewis because Lewis is a resident of Illinois and Plaintiff's claims arise out of and relate to Lewis' conduct in the state of Illinois.

26. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Lewis resides in this district and the transactions or some part thereof out of which the causes of action arose occurred in this district.

**PARTIES**

27. Plaintiff Patterson is a natural person who resides in Illinois.

28. Respondus is a Washington corporation with its principal place of business at 8201 164th Ave NE, Suite 200, Redmond, Washington 98052, and whose registered agent for service of process is C T Corporation System, 711 Capitol Way, Suite 204, Olympia, Washington 98501-1267.

29. Respondus is a self-described education company with "a deep understanding of online testing." RESPONDUS, https://web.respondus.com/about/ (last visited Nov. 13, 2020). For 20 years, Respondus has partnered with universities and other institutions of learning to develop "world-class educational technologies." *Id*.

30. Lewis is an Illinois not-for-profit corporation with its principal place of business at One University Parkway, Romeoville, Illinois 60446 and a registered agent of Robert R. Pluth Jr., 233 S. Wacker Drive, Suite 7100, Chicago, Illinois 60606.

**FACTUAL BACKGROUND**

A. <u>Online and Remote Proctoring</u>

31. During the COVID-19 pandemic, schools, colleges, universities and other educational institutions ("Institutions") have been forced to cease in-person instruction and move

to remote learning.  However, even prior to the pandemic, many Institutions like Lewis have offered online coursework that require students to take quizzes and exams online.

32.    To facilitate remote test-taking, Institutions contract with private companies that offer online exam monitoring and proctoring services.

33.    Respondus is one such company.

34.    Respondus offers several cloud-based software and service applications to assist educational institutions in providing online content and exams to students.

35.    Institutions like Lewis that use Respondus' applications incorporate these tools into the Institution's learning management system ("LMS").  Well-known LMSs include Canvas, Blackboard Learn, Brightspace, and Moodle.

36.    Upon information and belief, Lewis purchases a license from Respondus to integrate Respondus Monitor into Lewis' LMS.

37.    On its website, Respondus promotes its smooth integration of Respondus applications with these LMS platforms: "When we do everything right, users are unaware they're using a Respondus application because it looks and feels like a native tool of the LMS." RESPONDUS, https://web.respondus.com/partners/lms/ (last visited Nov. 13, 2020).

38.    Respondus' most widely-used LMS application is LockDown Browser, a custom browser that locks down a testing environment within an LMS.  Respondus states that LockDown Browser is the "gold standard" for securing online exams in classroom settings or proctored environments.  RESPONDUS, https://web.respondus.com/he/lockdownbrowser/ (last visited Nov. 13, 2020).

39.    Respondus also offers StudyMate, a tool to create flash cards, self-assessments, and learning games within the LMS, and Respondus 4.0, a tool for creating exams that can be

published directly to the LMS for online test-taking.  RESPONDUS,

https://web.respondus.com/he/respondus/ (last visited Nov. 13, 2020).

40.     Each of Respondus' applications has unique Terms of Use that an Institution or

student must accept prior to launching the software or service.

**B.     The Respondus Monitor Tool**

41.     This lawsuit arises from another of Respondus' applications—the "Respondus

Monitor" tool, a fully-automated exam proctoring solution that enables students to take exams

online in a *non-proctored* environment.

42.     Respondus' website claims that more than 1,000 higher educational institutions

are using Respondus Monitor for remote, un-proctored test-taking and more than 20 million

exams will be proctored this year using Respondus Monitor, far more than any other proctoring

service in higher education.  RESPONDUS, https://web.respondus.com/he/monitor/ (last visited

Nov. 13, 2020).

43.     Dozens of colleges and universities in Illinois use the Respondus Monitor tool.

44.     Respondus' website explains that "at the heart of [the] Respondus Monitor [tool]

is a powerful artificial intelligence engine, Monitor AI™, that performs a second-by-second

analysis of the exam session."  Monitor AI uses "facial detection, motion, and lighting to analyze

the student and examination environment."  RESPONDUS, https://web.respondus.com/he/monitor/

(follow "Learn More" link in "Monitor AI is the most advanced artificial intelligence system for

automated proctoring" box) (last visited Nov. 13, 2020).

45.     Respondus' website and marketing materials acknowledge that the Respondus

Monitor tool uses facial recognition technology to determine, among other things, whether the

person who started the exam switches to a different person along the way.  *Id.*

46.     Respondus' website explains this "data then flows into the 'Review Priority' system to help instructors quickly evaluate the proctoring results." *Id.*

47.     Review Priority is a "patent-pending method for ranking proctoring results according to the risk that violations have occurred. … If wanted, instructors can view the data contributing to the Review Priority result on a video timeline, such as flagged events and key milestones." RESPONDUS, https://web.respondus.com/he/monitor/ (follow "Learn More" link in "Review Priority ranks results by risk, helping instructors know which sessions warrant deeper scrutiny" box) (last visited Nov. 13, 2020).  However, the Respondus Monitor Student Terms of Use, the terms of use that students must accept before using Respondus Monitor for Lewis exams, say nothing about facial recognition, biometric identifiers, or biometric information and do not disclose to student users that their biometric identifiers or information will be captured, collected, analyzed, or disseminated to the student's Institution.

**C.      Test-Taking with Respondus Monitor**

48.     To take an exam using Respondus Monitor, a student must have a webcam.

49.     The student first logs into their Institution's LMS platform and opens the LockDown Browser.

50.     Next, the student is required to accept Respondus Monitor's Student Terms of Use (the "Monitor Student Terms") by clicking, "I accept."  Accepting the Monitor Student Terms is a condition of proceeding with the exam through Respondus Monitor.

**D.      The Monitor Student Terms**

51.     The Monitor Student Terms include two components—terms applicable to (i) the student's relationship with Respondus; and (ii) the student's relationship with the Institution.  A true and correct copy of the Monitor Student Terms are attached hereto as **Exhibit A** and are

publicly available on Respondus' website.  RESPONDUS, https://web.respondus.com/tou-monitor-student/ (last visited Nov. 13, 2020).

52.     The Monitor Student Terms inform the students that "your Institution is requiring students to use Respondus Monitor for certain, or all, courses.  In order to use Respondus Monitor, you must agree to these Terms in full, including this section under REQUIREMENTS OF YOUR INSTITUTION, regarding your relationship with your Institution."  (Ex. A.)

53.     Next, in relevant part, the Monitor Student Terms disclose that Respondus Monitor will record student activity, both audibly and visually, during exams.  (*See* Ex. A.)

54.     However, the Monitor Student Terms do *not* disclose that Respondus Monitor will use facial recognition technology to collect, capture, analyze, and disseminate a student's biometric identifiers or biometric information.

55.     Instead, the Monitor Student Terms cryptically state that "other data" related to student activity during an assessment may be recorded by Respondus Monitor.  The Terms state that "[t]he recordings are controlled by your Institution" and will be processed by Respondus on behalf of the Institution.  (*See id.*)

56.     This "other data" includes students' biometric identifiers and biometric information, but that fact is not disclosed in the Monitor Student Terms.

57.     The Monitor Student Terms disclose that Respondus "may analyze the recordings through automated processes to generate additional data derived from the recordings, with the additional data being associated with individual students for use by your Institution in evaluating the recordings."  (*Id.*)

58.     This "additional data" that Respondus generates includes students' biometric identifiers and biometric information, but that fact is not disclosed in the Monitor Student Terms.

59.     The Monitor Student Terms say this additional data and the original exam recordings "may be evaluated by agents of your Institution, including instructors to review, assess and analyze student performance and conduct … for the purpose of improving educational processes for students, including investigating student conduct violations." (*Id.*)

60.     This "additional data" that may be evaluated by an Institution includes students' biometric identifiers and biometric information, but that fact is not disclosed in the Monitor Student Terms.

61.     The Monitor Student Terms additionally state Respondus works with the Institution to ensure the student's privacy regarding the recording and to comply with applicable law as to any information or data. (*See id.*)

62.     This "data" that is subject to privacy laws includes students' biometric identifiers and biometric information, but that fact is not disclosed in the Monitor Student Terms.

63.     The Monitor Student Terms state Respondus Monitor will save all recordings of students for one year but that Institutions have the ability to retain data for up to an additional four years. (*See id.*)

64.     The "data" an Institution can retain for up to four years includes students' biometric identifiers and biometric information, but that fact is not disclosed in the Monitor Student Terms.

65.     The Student Terms do not establish a retention schedule or guidelines for permanently destroying students' biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information have been satisfied or within three years of the student's last interaction with Respondus or the Institution, whichever occurs first.

66.     To the contrary, the Monitor Student Terms state Respondus does not guarantee removal of "all traces of any information or data (including recordings) from the Respondus Monitor Services after deletion." (*See id*.)

67.     This trace "information and data" includes students' biometric identifiers and biometric information, but that fact is not disclosed in the Monitor Student Terms.

68.     Brazenly, in the Monitor Student Terms, the Institution unlawfully purports to disclaim any liability to the student for the "legality" or "availability of information or data in the Respondus Monitor Service or Software." The Monitor Student Terms also purport to disclaim any liability of the Institution to the student for harm resulting from "downloading or accessing any information or data through Respondus Monitor." (*See id*.)

**E.      Privacy Policies in the Monitor Student Terms**

69.     The Monitor Student Terms include two privacy policies—a Privacy and Security Policy (the "Monitor Privacy Policy") described in the Monitor Student Terms and the "full Respondus Privacy Policy" incorporated by reference and publicly available on Respondus' website. RESPONDUS, www.respondus.com/privacy (last visited Nov. 13, 2020) (the "Respondus Privacy Policy").

**F.      The Monitor Privacy Policy**

70.     The Monitor Privacy Policy states that "Instructors, administrators and other agents of Institution" may access the *recordings and data* related to their students through Respondus Monitor. (Ex. A.)

71.     The "recordings and data" that may be accessed by agents of the Institution include students' biometric identifiers and biometric information, but that fact is not disclosed in the Monitor Privacy Policy.

72. The Monitor Privacy Policy states that samples of de-identified student video recordings may be shared with researchers, including biometric experts. (*See id*.)

73. However, the Policy does not disclose that prior to sending student video to experts for research purposes, Respondus already captured the students' biometric information or biometric identifiers from these recordings.

74. The Monitor Privacy Policy does not establish a retention schedule or guidelines for permanently destroying students' biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information have been satisfied or within three years of the students' last interaction with Respondus or the Institution, whichever occurs first.

**G.** **The Respondus Privacy Policy**

75. The Respondus Privacy Policy is incorporated by reference into the Monitor Student Terms. A true and correct copy of the Respondus Privacy Policy obtained from Respondus' website is attached hereto as **Exhibit B.** RESPONDUS, www.respondus.com/privacy-policy/ (last visited Nov. 13, 2020).

76. The Respondus Privacy Policy does not disclose that Respondus collects student biometric identifiers and biometric information through Respondus Monitor. (*See* Ex. B.)

77. The Respondus Privacy Policy does not establish a retention schedule and guidelines for permanently destroying students' biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information have been satisfied or within three years of the student's last interaction with Respondus or the Institution, whichever occurs first. (*See id.*)

**H.**     **Other Relevant Monitor Student Terms**

78.     The Monitor Student Terms state that if the student does not agree to the Monitor Student Terms, "[the student] will not be permitted to use this service." (Ex. A.)

79.     The Monitor Student Terms have an integration clause that states, "the Terms constitute the entire agreement between the parties with respect to the subject contained herein and supersede any other agreements between Respondus and you regarding Respondus Monitor." (*Id.*)

80.     The Monitor Student Terms also provide that "[a]ll legal issues arising from or related to the use of Respondus Monitor between you and your Institution shall be construed in accordance with the laws of the state in which your Institution resides …." (*Id.*)

81.     The Monitor Student Terms state that "[b]y using Respondus Monitor and thus agreeing to these Terms, you consent to personal jurisdiction and venue in the state and federal courts located in the county in which your Institution resides." (*Id.*)

**I.**     **The Capture of Student Biometric Identifiers and Information**

82.     After a student clicks to accept the Monitor Student Terms in their browser, Respondus Monitor conducts a webcam check to confirm the webcam's audio and video are working properly. In this step, Respondus Monitor requires that a student's face be centered in the camera and that the student speak into the microphone.

83.     Next, Respondus Monitor's portal instructs the student to look into the webcam so it can capture an image of the student so the student's identity can be confirmed.

84.     Depending on the Institution's preference, the Respondus Monitor portal may require the student to show photo identification so the software can take a picture of the photo identification before proceeding.

85.     Next, the Respondus Monitor portal instructs the student to use the webcam to record a 360-degree "environment check" of the student's test-taking surroundings.  This recording is captured by the Respondus Monitor system.

86.     Lastly, Respondus Monitor conducts a "facial detection check" of the student taking the exam and requires the student to look directly into the webcam.

87.     During these pre-exam steps, unbeknownst to the student, Respondus Monitor captures the student's facial geometry and other biometric identifiers.

**J.      The Monitor Institution Terms**

88.     Upon information and belief, Lewis' use of Respondus Monitor is subject to Terms of Use applicable to Institutions (the "Monitor Institution Terms").  A copy of these terms are attached hereto as **Exhibit C** and are publicly available on Respondus' website.  Respondus, https://web.respondus.com/tou-monitor-admin/ (last visited Dec. 6, 2020).

89.     In the Monitor Institution Terms, Respondus discloses to Lewis that "Respondus Monitor analyzes the recordings of student activity as part of an automated proprietary process." (Ex. C.)

90.     Under the Monitor Institution Terms, Lewis is made aware that video recordings Lewis students make and send through Respondus Monitor are accessible to Lewis, its instructors, administrators, and other agents of Lewis.  (*Id.*)

91.     In the Monitor Institution Terms, Lewis agrees its students' recordings made while using Respondus Monitor may be used by Respondus and may "be shared with researchers (research institutions and/or biometric experts) under contract with Respondus to assist in such research …."  (*Id.*)

92.     The Monitor Institution Terms make clear that if Lewis authorizes Respondus to share student recordings or personally identifying information of any student with a third-party, Respondus will do so under the Institution's direction and control.  (*Id.*)

93.     The Monitor Institution Terms inform Lewis that Respondus Monitor saves all recordings of students for a period of one year but that Lewis has the ability to retain the data for up to an additional four years.  (*Id.*)

94.     The Monitor Institution Terms inform Lewis that Respondus "does not guarantee removal of all traces of any information or data (including recordings) from the Respondus Monitor Services after deletion."  (*Id.*)

95.     Lewis trains its faculty to use the Respondus Monitor tool for online exams, including a detailed demonstration of how it works and information about Respondus Monitor's automated flagging system.

96.     Lewis' publicly-available privacy policy and Student Handbook do not disclose that Lewis may collect, capture, disclose, or disseminate a student's biometric information or biometric identifiers.

97.     Lewis' privacy policy and Student Handbook do not inform students of Lewis' retention and destruction policy for biometric information and biometric identifiers.

**K.     Plaintiff's Experience with Respondus Monitor**

98.     Plaintiff Courtnie Patterson was a student at Lewis between 2015 and 2019.

99.     Ms. Patterson paid tuition and other fees to Lewis to take courses and receive credits toward a college degree.

100.    Ms. Patterson enrolled in courses at Lewis that required the use of Respondus Monitor for exams.  Ms. Patterson recalls using Respondus Monitor to take exams for a Medical Terminology course offered through the Biology department.

101.    Ms. Patterson recalls that in using Respondus Monitor for test-taking, she was required to take video footage of her surroundings and her face prior to starting the exam.

102.    When agreeing to use Respondus Monitor for the exam, Ms. Patterson did not know Respondus Monitor would collect and analyze her biometric identifiers or biometric information prior to and during the exams.

103.    When agreeing to use Respondus Monitor for her exams, Ms. Patterson did not give informed written consent for her biometric identifiers or information to be collected, stored, used, or disseminated.

104.    When agreeing to use Respondus Monitor, Ms. Patterson was unaware of any collection and retention policy that Lewis has regarding her biometric identifiers and biometric information that Lewis controls through Respondus Monitor.

105.    The context in which Ms. Patterson was asked to accept the Monitor Student Terms—as a requirement to successfully complete a college course examination—did not give her a meaningful choice.

## CLASS ALLEGATIONS

106.    Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated in the state of Illinois (the "Classes").

107.    The Classes of persons Plaintiff proposes to represent are tentatively defined as:

Class 1 (Respondus Monitor)

All persons who took an exam using Respondus Monitor in the state of Illinois at any time during the five years prior to the filing of this Complaint through trial.

Class 2 (Lewis University)

All persons who took an exam using Respondus Monitor as a student of Lewis in the state of Illinois at any time during the five years prior to the filing of this Complaint through trial.

108. Excluded from the Classes are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

109. The Classes defined above are identifiable through Defendants' business records.

110. The potential members of the Classes number at least in the thousands.

111. Individual joinder of these persons is impracticable.

112. Plaintiff Patterson is a member of each of the Classes.

113. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

a. Whether Defendants developed a written policy, available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purposes for collecting such identifiers or information have been satisfied or within three years of the individual's last interaction with Defendants, whichever occurs first, and whether Defendants complied with such written policy;

b. Whether Defendants collect, capture, or otherwise obtain Plaintiff's and Class members' biometric identifiers or information without:

(i) informing them in writing that a biometric identifier or biometric information is being collected and stored;

(ii)     informing them in writing of the specific purpose and length of

term for which biometric identifier or biometric information is

being collected, stored, and used; or

(iii)    obtaining their written release.

c.      Whether Defendants profit from Plaintiff's and Class members' biometric

identifiers or information;

d.      Whether Defendants disclose or disseminate Plaintiff's and Class

members' biometric identifiers or biometric information without Plaintiff's and Class members'

consent;

e.      Whether Defendants' conduct was negligent;

f.      Whether Defendants' conduct was knowing or reckless; and

g.      Whether Plaintiff and Class members are entitled to damages for violation

of their privacy rights.

114.    Plaintiff's claims are typical of the claims of Class members.

115.    Plaintiff is an adequate representative of the Classes because her interests do not

conflict with the interests of the Classes, she will fairly and adequately protect the interests of the

Classes, and she is represented by counsel skilled and experienced in class actions.

116.    Common questions of law and fact predominate over questions affecting only

individual Class members, and a class action is the superior method for fair and efficient

adjudication of the controversy.  The only individual question concerns identification of Class

members, which will be ascertainable from records maintained by Defendants.

117.    The likelihood that individual members of the Classes will prosecute separate

actions is remote due to the time and expense necessary to prosecute an individual case.

118.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CLAIM FOR RELIEF**
**Violation of 740 ILCS 15(a)**
**(On Behalf of Plaintiff and the Classes)**

119.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

120.    Respondus is a "private entity" for purposes of BIPA.

121.    Respondus is in possession of biometric identifiers or biometric information from students who use Respondus Monitor.

122.    Respondus does not have a written policy made available to the public establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information have been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first.

123.    Respondus' failure to maintain such a written policy is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Respondus is presumed to know these legal requirements. Respondus' selective disclosure on its website and for marketing purposes that it is collecting and using biometric data, but not disclosing this same information in the Monitor Student Terms, shows that Respondus' conduct is willful or reckless.  Respondus' conduct is all the more egregious given the current and public discourse among Respondus' customers and users about how online proctoring systems violate students' privacy rights.

124.    Lewis is a "private entity" for purposes of BIPA.

125.    Lewis is in possession of biometric identifiers or biometric information from students who use Respondus Monitor.

126.    Lewis does not have a written policy made available to the public establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information have been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first.

127.    Lewis does not comply with any established retention schedule or destruction guideline.

128.    Lewis' failure to maintain and comply with such a written policy is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Lewis is presumed to know these legal requirements. Lewis' conduct is all the more egregious given the current and public discourse in higher education about how online proctoring systems violate students' privacy rights.

129.    Defendants' unlawful conduct caused injury to Plaintiff and the proposed Classes.

130.    Plaintiff and the Classes seek damages, attorney's fees, and costs.

**SECOND CLAIM FOR RELIEF**
**Violation of 740 ILCS 15(b)**
**(On Behalf of Plaintiff and the Classes)**

131.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

132.    Respondus collects, captures, and obtains biometric identifiers or biometric information from students who use Respondus Monitor.

133. Respondus collects, captures, and obtains such identifiers or information without informing the students in writing that biometric identifiers or biometric information is being collected or stored.

134. Respondus collects, captures, and obtains such identifiers or information without informing the students in writing of the specified purpose and length of term for which biometric identifiers or biometric information is being collected, stored, and used.

135. Respondus collects, captures, and obtains such identifiers or information without receiving a written release executed by the students.

136. Respondus' unlawful conduct is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Respondus is presumed to know these legal requirements. Respondus' selective disclosure on its website and for marketing purposes that it is collecting and using biometric data, but not disclosing this same information in the Monitor Student Terms, shows Respondus' conduct is willful or reckless. Respondus' conduct is all the more egregious given the current and public discourse among Respondus' customers and users about how online proctoring systems violate students' privacy rights.

137. Lewis collects, captures, and obtains biometric identifiers or biometric information from students who use Respondus Monitor.

138. Lewis collects, captures, and obtains such identifiers or information without informing the students in writing that biometric identifiers or biometric information are being collected or stored.

139. Lewis collects, captures, and obtains such identifiers or information without informing the students in writing of the specified purpose and length of term for which biometric identifier or biometric information is being collected, stored, and used.

140. Lewis collects, captures, and obtains such identifiers or information without receiving a written release executed by the students.

141. Lewis' unlawful conduct is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Lewis is presumed to know these legal requirements. Lewis' conduct is all the more egregious given the current and public discourse in higher education about how online proctoring systems violate students' privacy rights.

142. Defendants' unlawful conduct caused injury to Plaintiff and the proposed Classes.

143. Plaintiff and the Classes seek damages, attorney's fees, and costs.

**THIRD CLAIM FOR RELIEF**
**Violation of 740 ILCS 15(c)**
**(On Behalf of Plaintiff and the Classes)**

144. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

145. Respondus is in possession of biometric identifiers or biometric information it collects when students use Respondus Monitor.

146. Respondus contracts with Institutions to provide the Respondus Monitor tool to Institutions and receives a fee in exchange.

147. Respondus profits from students' biometric identifiers or biometric information through contracts it has with Institutions for the Respondus Monitor service.

148.     Respondus' unlawful conduct is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Respondus is presumed to know these legal requirements.  Respondus' selective disclosure on its website and for marketing purposes that it is collecting and using biometric data, but not disclosing this same information in the Monitor Student Terms, shows Respondus' conduct is willful or reckless.  Respondus' conduct is all the more egregious given the current and public discourse among Respondus' customers and users about how online proctoring systems violate students' privacy rights.

149.     Lewis is in possession of biometric identifiers or biometric information it collects when students use Respondus Monitor.

150.     Lewis charges students tuition and other fees for academic courses Lewis offers. To complete required course examinations, students are required to use the Respondus Monitor tool.

151.     Lewis profits from requiring students to use Respondus Monitor, as it allows Lewis to offer online coursework and thereby receive tuition dollars from students.

152.     Lewis' unlawful conduct is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Lewis is presumed to know these legal requirements.  Lewis' conduct is all the more egregious given the current and public discourse in higher education about how online proctoring systems violate students' privacy rights.

153.     Defendants' unlawful conduct caused injury to Plaintiff and the proposed Classes.

154.     Plaintiff and the Classes seek damages, attorney's fees, and costs.

## FOURTH CLAIM FOR RELIEF
### Violation of 740 ILCS 15(d)
### (On Behalf of Plaintiff and the Classes)

155. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

156. Respondus is in possession of biometric identifiers or biometric information it collects when students use Respondus Monitor.

157. Respondus discloses or disseminates students' biometric identifiers or biometric information to the student's Institution without the student's consent to the disclosure.

158. Respondus' unlawful conduct is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Respondus is presumed to know these legal requirements. Respondus' selective disclosure on its website and for marketing purposes that it is collecting and using biometric data, but not disclosing this same information in the Monitor Student Terms, shows Respondus' conduct is willful or reckless. Respondus' conduct is all the more egregious given the current and public discourse among Respondus' customers and users about how online proctoring systems violate students' privacy rights.

159. Lewis is in possession of biometric identifiers or biometric information it collects when students use Respondus Monitor.

160. Lewis discloses or disseminates students' biometric identifiers or biometric information to its instructors and other agents without the students' consent to the disclosure.

161. Lewis' unlawful conduct is negligent and reckless because BIPA has governed the collection and use of biometric identifiers and biometric information since 2008, and Lewis is presumed to know these legal requirements. Lewis' conduct is all the more egregious given

the current and public discourse in higher education about how online proctoring systems violate students' privacy rights.

162.     Defendants' unlawful conduct caused injury to Plaintiff and the proposed Classes.

163.     Plaintiff and the Classes seek damages, attorney's fees, and costs.

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     An award to Plaintiff and the Classes of damages, as allowed by law; and

E.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of herself and all others similarly situated, hereby demands trial by jury on all issues in this Complaint that are triable as a matter of right.

Dated: January 22, 2021                    Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
              misny@mmmb.com

26

Mary C. Turke
Turke & Strauss LLP
613 Williamson Street #201
Madison, WI 53703
Telephone: 608.237.1775
Facsimile: 608.509.4423
E-mail: mary@turkestrauss.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2021, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by email to counsel of record by operation of the court's

electronic filing system.

**/s/ Brian K. Murphy**
Brian K. Murphy