```
              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


COURTNIE PATTERSON,            )
individually and on behalf     )
of all others similarly        )   Docket No. 20 C 7692
situated,                      )
                               )
              Plaintiff,       )
                               )
        vs.                    )
                               )
RESPONDUS, INC. and LEWIS      )
UNIVERSITY,                    )   Chicago, Illinois
                               )   April 9, 2021
              Defendants.      )   9:30 a.m.


            TRANSCRIPT OF PROCEEDINGS - Motion
     BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER


APPEARANCES:

For the Plaintiff:      MURRAY MURPHY MOUL + BASIL LLP
                        BY:  MR. BRIAN K. MURPHY
                             MR. JONATHAN P. MISNY
                        1114 Dublin Road
                        Columbus, Ohio  43215

For the Defendants:     BAKERHOSTETLER
                        BY:  MS. BONNIE K. DelGOBBO
                        One North Wacker Drive, Suite 4500
                        Chicago, Illinois  60606

                        KOPON AIRDO LLC
                        BY:  MS. COLETTE L. KOPON
                        111 East Wacker Drive, Suite 500
                        Chicago, Illinois  60601

Court Reporter:         FRANCES WARD, CSR, RPR, RMR, FCRR
                        Official Court Reporter
                        219 S. Dearborn Street, Suite 2524A
                        Chicago, Illinois  60604
                        (312) 435-5561
                        frances_ward@ilnd.uscourts.gov
```

```
 1              (The following proceedings were had telephonically:)
 2              THE CLERK:  20 C 7692, Patterson versus Respondus.
 3              THE COURT:  Good morning.  This is Judge Pallmeyer.
 4              I am going to ask for your appearances.
 5              We will begin with the plaintiffs.
 6              MR. MURPHY:  Good morning, your Honor.
 7              This is Brian Murphy on behalf of the plaintiff.
 8   And with me is Jonathan Misny.
 9              THE COURT:  Okay.
10              And for the defendant.
11              MS. DelGOBBO:  Good morning, your Honor.
12              This is Bonnie DelGobbo on behalf of respondent.
13              THE COURT:  Okay.
14              MS. KOPON:  Good morning, your Honor.
15              Colette Kopon on behalf of Lewis University.
16              THE COURT:  All right.  Thanks.
17              We have a couple of matters.
18              One, there is a motion for leave to file *instanter*
19   a reply in support of the motion for stay of the case.  I am
20   going to grant the motion for leave to file the surreply.
21              The more significant issue, I think, is this
22   concern about a protective order that has just bubbled up.
23   The defendant has asked for a protective order with respect
24   to certain discovery obligations, including various
25   recordings -- or video recordings and photos that were
```

1    captured by an online exam monitoring software.
2             And my understanding of the memorandum that
3    respondent has submitted is that it's respondent's position
4    that these recorded materials would have nothing to do with
5    the issues.
6             Does plaintiff have a response to that motion?
7             MR. MURPHY:  Your Honor, many of the things that
8    were in that motion we saw for the first time sort of late in
9    the day on Wednesday.  We would like time to reply to that in
10   writing.
11            We have lots of concerns as it relates to that,
12   because there are other pending cases involving
13   institutions -- for instance, at the state court level --
14   that could be impacted by whatever the Court could decide on
15   that issue.
16            We do think there's the potential relevancy for
17   some of those materials, but we would like an opportunity to
18   fully brief it.
19            Like I said, many of the -- we had had some prior
20   discussions with them, but many of the sort of facts and
21   issues we were first made aware of in their filing on
22   Wednesday.
23            THE COURT:  Well, I understood that there had been
24   some discussion about this at one point in at least the
25   beginnings of a stipulation that the production would not be

1      required.  But you have changed your mind on that.

2              Can you tell us why?

3              MR. MURPHY:  No.  Your Honor, that's not fair.  And

4      I think counsel should correct the record on that.

5              I did not -- at no point in time did we agree that

6      we -- that their destruction of this stuff would be

7      appropriate.  What we said is, we would consider it.  And I

8      think in the context of that, I said, even if we considered

9      it, certainly we would have to sort of agree to some

10     stipulation to sort of agree exactly what the scope of that

11     might look like and sort of what the restraints on that might

12     be.  We never sort of agreed.

13             And, your Honor, for the first time in their motion

14     did we even understand the scale of the materials at issue

15     going back five years and sort of -- you know, now they are

16     making contractual obligations, things of that nature.

17             What happened was, your Honor, in our first call,

18     we received a request from defense counsel that they wanted

19     to have a call with us about electronic discovery.  That was

20     the entire scope of the request.  We agreed to participate in

21     that call.

22             And during that call, they generally raised this

23     issue about the existence of these videos and their need to

24     not want to have to sort of maintain those for the duration

25     of the litigation.  There was no detail sort of beyond that.

1       Subsequent to that, we sort of analyzed and
2  discussed the issue amongst ourselves and realized that some
3  of those materials could be potentially relevant to some of
4  the claims sort of going forward.  So we were unwilling at
5  that time to sort of agree to a stipulation, particularly --
6  you know, we are in a situation now where they want a
7  protective order to give them the right to sort of destroy
8  evidence, at the same time asking the Court to stay our
9  ability to take any discovery and sort of, you know, for
10 instance, talk to some of these witnesses about how their
11 system works, how the data is collected, what it is exactly
12 used for.
13      We are being asked to sort of just trust their
14 unchallenged declarations on all this, and we just don't
15 think it's appropriate at this early juncture.
16      We think -- you know, we haven't even had the
17 ability to serve discovery requests yet.  We sort of think
18 the way this should be handled is sort of in the normal
19 course, which is, at some point we will serve discovery
20 requests, and then we will be able to meet and confer about
21 what is or isn't responsive.
22      But I just -- I don't -- I really think they are
23 asking the Court for what is, in essence, an advisory opinion
24 about what is or is not potentially responsive to future
25 discovery requests.  And again, your Honor, that has impacts

1  not just in this case, but there are other cases pending in
2  state court involving just the institutions and not
3  Respondus, the defendant.  And that would be impacting -- you
4  know, I suppose what those judges decide may or may not be
5  relevant in those particular cases.
6      MS. DelGOBBO:  Your Honor, if I could respond?
7      THE COURT:  Sure.
8      MS. DelGOBBO:  So during the -- as we laid out in
9  our briefing -- as I accurately laid our in our briefing and
10 as Mr. Murphy noted, we had reached out to them early to note
11 that we wanted to discuss electronic preservation.
12     On our initial Zoom meeting, I had generally
13 explained to them that we had video recordings, that it was
14 going to be very expensive to try to preserve those video
15 recordings, that they didn't contain -- we had previously
16 actually provided them a declaration about how the software
17 works and that the facial template that we understand
18 plaintiff is going to be alleging is biometric, and we don't
19 agree that it is biometric.  And so we had provided them a
20 declaration explaining that that facial template is
21 completely separate from all of these video recordings.
22     So we had generally discussed on the call that we
23 were looking for a stipulation early on to clarify that we
24 didn't need to preserve -- attempt to preserve the video
25 recordings.

1    Mr. Murphy had indicated on that call that he
2    understood the concern and that his team would think about it
3    further.  And if they were willing to move forward with that,
4    they were going to send us a draft stipulation with some
5    language noting that we wouldn't use, essentially, the
6    absence of the videos against them in the case.
7    We tried to follow up with them, then, over the
8    course of the next week or so and didn't hear anything back.
9    So we ended up preparing a proposed stipulation ourselves to
10   try to move things along.
11   And at that point, they just shut down the
12   discussion and didn't really provide much justification for
13   why they weren't willing to do it.  They just generally told
14   us that they weren't willing to agree to a stipulation at
15   this time and wanted to get into discovery first.
16   We scheduled another call to try to get a better
17   understanding of what their concerns were.  And again, it was
18   just kind of a refusal at this early juncture to talk about
19   the preservation issue.
20   What we are looking for, your Honor, is not an
21   advisory opinion.  The reason that we wanted to bring it to
22   the Court's attention early on is that we want to make clear
23   that, right now, Respondus has no ability to preserve this
24   information.
25   So whether the case proceeds or whether the stay is

1  granted, as we think it should be, we wanted to make sure
2  that the Court was aware that we are not able to preserve
3  this information right now so that it's not an issue down the
4  road to find out that it's not being preserved.
5        As we laid out in our motion, in order to try to
6  make efforts to preserve this, the company estimates it would
7  cost them in excess of half a million dollars, because
8  essentially what they would need to do is go out and hire a
9  bunch of additional personnel, who would then personally
10 reach out to all of their clients in an attempt to
11 renegotiate the contract provision.
12       The videos belong to Respondus' clients, not to
13 Respondus.  And so Respondus is under an obligation to delete
14 the data in accordance with the client's contractual
15 requirements.  So we are looking at having to renegotiate
16 contracts with 1500 clients worldwide since there is no
17 technical -- technological way for Respondus to just try to
18 target changing retention for Illinois-specific customers.
19       There is just -- the data right now is not being
20 retained beyond the default five years, or whatever the rule
21 may have set, because we don't have any way to do that right
22 now.
23       THE COURT:  Well, I am assuming -- maybe you can
24 clarify this for me.
25       I guess I am assuming that records relevant to what

1  goes on at Lewis University -- those recordings, thumbnail
2  images, and photos, et cetera -- would be preserved.
3          You are talking about this worldwide, all of
4  Respondus' clients anywhere in the world; is that right?
5          MS. DelGOBBO:  So if there were -- there is not
6  really a way to separate out -- to just separate out and
7  retain solely for Illinois institutions unless they change
8  the retention period.  They essentially would delete the
9  retention period for all institutions.  And then they would
10 have to rewrite individually for every single individual
11 school different retention rules that apply to that
12 individual school.
13         The way that their programming works, there is not
14 really -- there is not a simple way to just try to retain
15 data only for Illinois schools.
16         I know plaintiff mentioned that there is other
17 cases against individual universities.  Those aren't -- you
18 know, cases where we are not a party, where Respondus isn't a
19 party, there is no preservation obligation on Respondus at
20 that point.  To the extent that the schools in those cases
21 believe they have some kind of preservation obligation, that
22 would be a separate discussion for the schools to be having
23 with plaintiff and Respondus.
24         But in this case, since it's Respondus that's been
25 sued and the data that they are looking for is not data that

1  belongs to Respondus or that Respondus can, you know, legally
2  inconsistent with its client contract, just start
3  unilaterally retaining beyond the contractual period, that's
4  really the issue that's before the Court here.
5              MS. KOPON:  And, your Honor, I would add -- this is
6  Colette Kopon for Lewis University.
7              I would just add to that, that Lewis would join in
8  seeking a protective order here because the school does not
9  have any independent ability to preserve those videos.  It's
10 really tied up in how Respondus operates its software.  So
11 it's not something where Lewis is differently situated than
12 the other Illinois institutions in terms of its ability to
13 preserve.
14             THE COURT:  Well, then what difference do the
15 individual contracts make?
16             You mentioned that individual contracts with all of
17 these clients would have to be renegotiated in some fashion.
18 That suggests to me that there are individual relationships
19 with the various clients, as opposed to some blanket document
20 retention or nonretention policy.
21             I am stabbing around here because I really don't
22 understand completely the way the stuff is maintained, but I
23 would think there ought to be a way, at a minimum, to obtain
24 the materials vis-à-vis Lewis University.  Whether or not we
25 could expand that to the State of Illinois based upon the way

1  Respondus keeps its records, I don't know.

2  MS. DelGOBBO: The complication, your Honor, is
3  that there is -- the maximum data retention with the way that
4  Respondus' programming is set up, the maximum data retention
5  period for any school is five years. And there is no ability
6  right now for Respondus to offer individual retention periods
7  longer than five years because there is kind of a blanket
8  default rule that all data will be deleted after five years.

9  There is a small handful of schools who have worked
10 with Respondus to develop shorter than that retention periods
11 if they don't want the data kept around for the default five
12 years. I believe it's like less than 1 percent of Respondus'
13 clients have requested a shorter retention period. So they
14 are able to work with just that handful of clients to write
15 some custom programming to keep it for a less amount of time.

16 But there is no way for them to keep data for any
17 customer for a longer than five-year period of time right
18 now, in part, because the contracts all specify that
19 Respondus will not retain the data beyond five years.

20 THE COURT: I'm not sure that the five years is a
21 problem because my understanding is the plaintiff's proposed
22 class is a five-year class.

23 MS. DelGOBBO: Yes. So there's not going to be --
24 you know, as you're kind of pointing out, it's not that --
25 it's not going to be the case that all -- that there's just

1  going to be suddenly no video recordings around.  To the
2  extent that somewhere down the line plaintiff wants to make
3  an argument during discovery that they should be entitled to
4  get a sampling of videos or something, there will be videos
5  around still.
6          The five-year period is just trailing.  So, you
7  know, like tomorrow -- I'm not exactly sure how often the
8  deletions happen, daily or weekly.  But, you know, for
9  example, like the recordings that are around today are
10 available back five years from today.  And as of next week,
11 they will be available back five years from next week.  So,
12 you know, there is always going to be some videos around.
13 It's just that the oldest ones are always being deleted based
14 on the default retention.
15         THE COURT:  Right.  And there's no way to change
16 things even vis-à-vis Lewis University and their records?
17         MS. DelGOBBO:  Not beyond five years without making
18 a global change.
19         THE COURT:  Got it.
20         MR. MURPHY:  Your Honor, this is Brian Murphy.
21         Could I weigh in for a minute?
22         THE COURT:  Sure.  Sure.
23         MR. MURPHY:  So one thing here is -- and, again,
24 this raises concern.  You know, they raise this issue about
25 the contractual obligations, right, but I don't -- really I

1  don't think that is of any moment.  Right?
2  		The fact that they have been sued and these things
3  are potentially material and relevant to the litigation sort
4  of trumps whatever their individual contracts may say.  And I
5  think the contracts -- you know, if we can phrase this --
6  sort of have provisions in there that we believe sort of
7  account for that.  They also have provisions in their
8  contracts about, you know, retaining this data for sort of
9  research and analysis purposes.
10 		But also, this sort of highlights generally our
11 concern, which is -- you know, in addition to like the
12 videos, right, a lot of this data is going to relate to, for
13 instance, server logs that would help us identify the class
14 in terms of who actually logged in using their software
15 product and who was -- you know, took a test and things of
16 that nature.
17 		And what I'm hearing is, they are not going to
18 be -- you know, they can't sort of segregate that by the
19 various Illinois institutions in that, you know, some of
20 that -- in addition to these videos, that kind of data sounds
21 to me like it can't get segregated.  So that may be lost.
22 		And, again, this heightens our concern about sort
23 of doing anything at this point that would relieve them of
24 their standard obligations to maintain materials that are
25 potentially relevant to the litigation.

1    MS. DelGOBBO: On that concern, I did want to point
2 out, in the declaration that we provided, other data about
3 exam sessions, such as like the student user, the time they
4 took an exam, the length, the time that the exam lasted, that
5 can all -- that is something that can all be -- it's sort of
6 saved separately from this bucket of media images and videos.
7 And so that's something that can be preserved for a longer --
8    MR. MURPHY: But -- but -- but --
9    MS. DelGOBBO: -- period of time.
10    MR. MURPHY: I'm sorry, Bonnie, but you're still
11 preserving it beyond the five-year limitation that you claim
12 you have a contractual obligation to destroy this stuff. The
13 contract doesn't talk about server logs versus, you know,
14 video data. It's all talked about in the same bucket.
15    So I feel like the defendant is sort of trying to
16 have it sort of both ways in terms of what they want to do
17 here.
18    And we just think -- you know, without our ability
19 to even have been able to serve our first discovery requests,
20 we just think it's inappropriate for them to be granted this
21 sort of a *carte blanche* right to sort of destroy potentially
22 relevant materials.
23    THE COURT: Okay. To cut through this issue about
24 the contracts with the individual institutions, I agree with
25 plaintiff that a court order to preserve would trump those

1  provisions.
2  　　　　I only asked about that because the assertion was
3  made that it would not be possible to do -- to stop the
4  preservation without individual negotiations with all these
5  institutions.  I'm not sure -- I was assuming that that meant
6  that the clients' records were somehow segregated -- the
7  various clients' records were somehow segregated from one
8  another.  What I'm hearing is that they are not.  Under those
9  circumstances, unfortunately, I do think that the defendant
10 is going to have to preserve everything.
11 　　　　It may very well be -- I am only hearing from
12 lawyers right now.  It may be that a tech person would be
13 able to segregate the documents in some fashion.  I will take
14 your word for it at this point that that's been explored and
15 it can't be done.  And I think, under those circumstances,
16 unfortunately, we do need preserve them at least until
17 plaintiff has a better grasp on what the records consist of
18 and how they may or may not enlighten the claim.  It's just
19 an artifact of the way the stuff is being maintained, I
20 guess.
21 　　　　And I don't expect that it should take us a long
22 time to get this ironed down.  I am thinking, for example,
23 despite the possible stay, that we should proceed with a
24 30(b)(6) deposition on the issue of what's in those records
25 and how they are maintained from a tech person so that

1  plaintiffs can get some comfort that what's being discarded
2  is really not going to make a difference in this case, which
3  I think is likely to happen with some quick discovery on that
4  issue.
5        So here is what I am going to do:  I am going to
6  enter and continue the motion for a protective order.
7        I will also need to review the surresponse brief
8  before ruling on the motion for a stay.  Whether or not that
9  stay gets entered, I am going to direct that within the next
10  30 days there be a 30(b)(6) witness of the -- of somebody who
11  does tech stuff for Respondus to explain to plaintiff what is
12  and is not being lost, and then we can make a determination
13  about whether or not the stipulation that had been proposed
14  should be adopted, whether there is some other tweaking that
15  could be done.
16        And it may very well be that that testimony will
17  satisfy plaintiff's counsel that really there is no prejudice
18  in the document preservation policy being carried out as it
19  always has been.
20        MR. MURPHY:  Your Honor --
21        MS. DelGOBBO:  The deposition, your Honor, would be
22  limited to the issue of -- would be limited to the issue of
23  preservation that we briefed?
24        THE COURT:  Yes.  Exactly.
25        MR. MURPHY:  Your Honor, this is Brian Murphy,

1    plaintiff's counsel.
2            The one thing I would just ask, in terms of the
3    30(b)(6), is -- I understand the preservation issue, but I
4    think part of our concern and need to know is sort of having
5    a better understanding of exactly how their system works and
6    what data it captures and how it stores that.
7            So obviously we don't want to -- I don't want to
8    have to take a 30(b)(6) deposition too prematurely on issues
9    that we are going to get to later in the case, but I also
10   want to make sure that I am able to ask some questions to
11   help me understand how their system works and then store that
12   data.
13           THE COURT:  Sure.  We are still talking about
14   document preservation.  What we are not talking about is
15   liability issues.
16           MR. MURPHY:  No.  Right.  Right.
17           THE COURT:  All right. So why don't we set it over
18   for a further telephone conference in about four weeks.  At
19   that point I am hoping you will have this accomplished, and
20   we can talk about whether -- I will certainly be ready to
21   rule on the motion for stay at that point.
22           In the meantime, we can also, I hope, get some
23   clarity on the protective order.
24           Would four weeks from now work for us, Nicole?
25           THE CLERK:  May 7th at 9:30.

```
 1            THE COURT:  Does that date work both of you -- or
 2   all three of you, I should say?
 3            MR. MURPHY:  It does for plaintiff, your Honor.
 4            MS. DelGOBBO:  Yes, that works for me as well, your
 5   Honor.
 6            MS. KOPON:  It works for Lewis.
 7            THE COURT:  All right.  I will talk to you then.
 8   Thank you.
 9            MR. MURPHY:  Thank you, your Honor.
10            MS. DelGOBBO:  Thank you.
11            MS. KOPON:  Thank you.
12         (An adjournment was taken at 9:52 a.m.)
13                     *    *    *    *    *
14   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
15
16   /s/ Frances Ward_____April 14, 2021.
     Official Court Reporter
17   F/j
```