**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COURTNIE PATTERSON, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 20-cv-07692 |
| Plaintiff, | ) ) | Hon. Rebecca R. Pallmeyer |
| | ) | Magistrate Judge Young B. Kim |
| v. | ) ) | |
| RESPONDUS, INC. and LEWIS UNIVERSITY, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT**
**OF ITS RULE 12(B)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

    I.      Procedural History. ..............................................................................1

    II.     Alleged Facts. .......................................................................................2

ARGUMENT .......................................................................................................3

    A.    Legal Standard. ....................................................................................3

    B.    Plaintiff Cannot Pursue Claims Under BIPA, An Illinois Law, Because Washington Law Applies. ........................................................4

        (i)     The Illinois Biometric Information Privacy Act. ............................4

        (ii)    Washington Biometric Privacy Legislation. ..................................5

        (iii)   Washington Law Applies To Disputes Between Plaintiffs And Respondus Concerning Respondus Monitor...................................5

            (1)    Applying Washington Law does not violate fundamental Illinois public policy. .....................................7

            (2)    Illinois does not have a materially greater interest than Washington in the litigation.................................9

    C.    Plaintiffs Have Alleged That Respondus Complied With BIPA ..............10

        (i)     Plaintiffs Have Not Alleged A Violation of Section 15(a)............11

        (ii)    Plaintiffs Have Not Alleged A Violation of Section 15(b)...........12

        (iii)   Plaintiffs Have Not Alleged A Violation Of Section 15(c)..........15

        (iv)   Plaintiffs Have Not Alleged A Violation of Section 15(d)...........18

    D.    BIPA Does Not Apply to Respondus' Use of Photographs.....................19

    E.    The Dismissal Should Be With Prejudice................................................19

CONCLUSION.....................................................................................................20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amin Ijbara Equity Corp. v. Village of Oak Lawn*,
860 F.3d 489 (7th Cir. 2017) ........................................................................4, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................3, 4

*Bridges v. Respondus, Inc.*,
No. 1:21-cv-01785 ......................................................................................2

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ........................................................................4, 11

*Dean v. Smith*,
2017 IL App. (1st) 170404, 84 N.E.3d 379 ...................................................16

*Demitropoulos v. Bank One Milwaukee, N.A.*,
915 F. Supp. 1399 (N.D. Ill. 1996) ...............................................................7

*English Co. v. Northwest Envirocon, Inc.*,
278 Ill. App. 3d 406 (1996) ..........................................................................6

*In re Facebook Biometric Information Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .........................................................8, 9

*Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*,
947 F. Supp. 2d 922 (N.D. Ind. 2013) ...........................................................4, 11

*Gociman v. Loyola Univ. of Chi.*,
No. 20 C 3116, 2021 WL 243573....................................................................19

*Gonzalez-Koeneke v. West*,
791 F.3d 801 (7th Cir. 2015) ........................................................................19

*Hinds v. Respondus, Inc.*,
No. 2020 CH 06814 (Cook Cnty. Cir. Ct.)......................................................1

*Janice Doty Unlimited, Inc. v. Stoecker*,
697 F. Supp. 1016 (N.D. Ill. 1988) ...............................................................7

ii

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ............................................................................................6

*Lucius Veiga, Michael Sterchele, and Alex Parker Zimmerman v. Respondus, Inc.*,
No. 2021 CH 01544 (Cook Cnty. Cir. Ct.). (*Veiga v. Respondus*, No. 1:21-cv-
02620 (N.D. Ill.) ("*Veiga*")) ..............................................................................2

*M. Block & Sons, Inc. v. International Business Machines Corp.*,
No. 04 C 340, 2004 WL 1557631 (N.D. Ill. July 8, 2004) ...................................7

*Maher & Associates, Inc. v. Quality Cabinets*,
267 Ill. App. 3d 69 (1994) ...................................................................................6

*Medline Industries Inc. v. Maersk Medical Ltd.*,
230 F. Supp. 2d 857 (N.D. Ill. 2002) ...................................................................6

*Mell v. Goodbody & Co.*,
10 Ill. App. 3d 809 (1st Dist. 1973) ......................................................................8

*Midway Home Entertainment, Inc. v. Atwood Richards, Inc.*,
No. 98 C 2128, 1998 WL 774123 (N.D. Ill. Oct. 29, 1998) ....................6, 7, 9, 10

*Midwest Grain Prods. of Ill., Inc. v. Productization, Inc. & Cmi Corp.*,
228 F.3d 784 (7th Cir. 2000) ...............................................................................6

*Patterson v. Respondus, Inc.*,
No. 1:20-cv-07692 (N.D. Ill.) .........................................................................1, 2

*Peregrine Emerging CTA Fund, LLC v. Tradersource, Inc.*,
2008 WL 474369 (N.D. Ill. Feb. 19, 2008) ..........................................................6

*Pooh-Bah Enters., Inc. v. Cty. of Cook*,
232 Ill. 2d 463, 905 N.E.2d 781 (2009) .............................................................16

*Potomac Leasing Co. v. Chuck's Pub, Inc.*,
156 Ill. App. 3d 755 (2d Dist. 1987) .....................................................7, 8, 9, 10

*Sekura v. Krishna Schaumburg Tan, Inc.*,
2018 IL App. (1st) 180175, 115 N.E.3d 1080 ................................................16, 17

*Smurfit Newsprint Corp. v. Southeast Paper Mfg.*,
368 F.3d 944 (7th Cir. 2004) ...............................................................................6

*Telular Corp. v. Mentor Graphics Corp.*,
282 F. Supp. 2d 869 (N.D. Ill. 2003) ...................................................................7

*Washington State Major League Baseball Stadium Pub. Facilities Dist. v. Huber,*
  *Hunt & Nichols-Kiewit Const. Co.*,
  296 P.3d 821 (Wash. 2013)...................................................................................11

*WTM, Inc. v. Henneck*,
  125 F. Supp. 2d 864 (N.D. Ill. 2000) ....................................................................7

**Statutes**

740 ILCS 14/5(a) ...............................................................................................5, 17

740 ILCS 14/5(b) ...................................................................................................17

740 ILCS 14/10 ......................................................................................................19

740 ILCS 14/15(a) ..................................................................................................11

740 ILCS 14/15(b) ..................................................................................................12

740 ILCS 14/15(c) .............................................................................................15, 16

740 ILCS 14/15(d) ..................................................................................................18

740 ILCS 15/5(a) ....................................................................................................17

740 ILCS 15/5(c), (g) .............................................................................................17

740 ILCS 15/5(d) & (e) ...........................................................................................17

28 U.S.C. §§ 1332(a), 1332(d), and 1441 ...............................................................1

Wash. Rev. Code Ann. § 19.375.020 ...................................................................5, 8

Wash. Rev. Code Ann. § 19.375.900 ........................................................................5

**Rules**

Local Rule 40.4 ........................................................................................................2

Rule 12(b)(6)................................................................................................... *passim*

4837-9157-2717.1

Plaintiff's First Amended Class Action Complaint (Doc. 12) ("Complaint") alleges that Defendant, Respondus, Inc. ("Respondus"), violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), through Plaintiff's use of Respondus Monitor, a remote exam proctoring program. The Complaint, however, fails to state a claim and must be dismissed with prejudice pursuant to Rule 12(b)(6) for three independent reasons. First, BIPA is an Illinois law, and the Terms of Use that Plaintiff incorporates by reference in her Complaint provides that all disputes between her and Respondus are governed by Washington law. Thus, BIPA simply does not apply to Plaintiff's claims. Second, even if BIPA did apply, the documents that Plaintiff incorporates by reference in her Complaint demonstrate that Respondus complied with BIPA. Third, BIPA specifies that it does not apply to the information that forms the basis of Plaintiff's BIPA claims—photographs and information derived from photographs.

## BACKGROUND

### I. Procedural History.

On November 16, 2020, Plaintiff Jerrie Hinds, through her counsel, filed a case against Defendant in the Circuit Court of Cook County, Illinois, captioned *Hinds v. Respondus, Inc.*, No. 2020 CH 06814 (Cook Cnty. Cir. Ct.), alleging that Defendant violated BIPA through its Respondus Monitor remote exam proctoring software. (*See Patterson v. Respondus, Inc.*, No. 1:20-cv-07692 (N.D. Ill.) ("*Patterson*"), Doc. 1 at ¶ 1). On December 23, 2020, Defendant timely removed the case to this Court on the basis of the Class Action Fairness Act and on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a), 1332(d), and 1441. (*Patterson* Doc. 1.) On January 22, 2021, Plaintiff Courtnie Patterson was added to the action via the filing of the First Amended Complaint (*Patterson* Doc. 12), and Plaintiff Jerrie Hinds was voluntarily dismissed without prejudice (*Patterson* Doc. 13).

On March 31, 2021, Plaintiffs Lucius Veiga, Michael Sterchele, and Alex Parker Zimmerman filed a duplicative action in the Circuit Court of Cook County, Illinois, captioned *Lucius Veiga, Michael Sterchele, and Alex Parker Zimmerman v. Respondus, Inc.*, No. 2021 CH 01544 (Cook Cnty. Cir. Ct.). (*Veiga v. Respondus*, No. 1:21-cv-02620 (N.D. Ill.) ("*Veiga*") Doc. 1 at Ex. 1.) Defendant was served on April 16, 2021 and timely removed the case to this Court on May 14, 2021. (*Veiga* Doc. 1 ¶¶1-3.) The Court granted a Local Rule 40.4 motion to deem *Veiga* as related to *Patterson* on May 20, 2021. (*Patterson* Doc. 46; *Veiga* Doc. 9.)

Meanwhile, on April 2, 2021, the same counsel representing Plaintiff Patterson filed yet another duplicative case on behalf of Plaintiffs Philip Bridges and Cheng Wu. (*Bridges v. Respondus, Inc.*, No. 1:21-cv-01785 ("*Bridges*"), Doc. 1). The Court granted a motion to deem *Bridges* as related to *Patterson* on April 21, 2021. (*Patterson* Doc. 41; *Bridges* Doc. 14.)

## II. Alleged Facts.

Plaintiffs allege that Respondus violated BIPA through Plaintiffs' use of Respondus' remote exam proctoring program called Respondus Monitor. (*See generally Patterson* Doc. 12.) Plaintiffs allege that Respondus Monitor collected their "biometric information" and "biometric identifiers" during remote exam proctoring sessions. (*E.g.*, Compl. ¶¶ 3, 18.) The Complaint includes one count for alleged violation of Section 15(a) of BIPA related to data retention and destruction policies and practices; one count for alleged violation of Section 15(b) of BIPA related to written consent and release requirements; one count for alleged violation of Section 15(c) related to profiting from students' use of Respondus Monitor; and one count for alleged violation of Section 15(d) related to disclosing or disseminating data without consent. (Compl. ¶¶ 119-163.) Plaintiffs seek to assert their claims individually and on behalf of a putative class defined as "[a]ll persons who took an exam using Respondus Monitor in the state of Illinois at any time during the five years prior to the filing of this Complaint through trial." (Compl. ¶ 107.)

The Complaint explicitly references the Terms of Use for Respondus Monitor and attaches the Terms of Use as Exhibit A to the Complaint. (Compl. ¶¶ 50-69, 78-82, 105; Compl. at Ex. A.) Plaintiff alleges that "[a]ccepting the Monitor Student Terms is a condition of proceeding with the exam through Respondus Monitor" (Compl. ¶ 50), and further allege that she personally agreed to the Terms of Use in connection with using Respondus Monitor to take exams (Compl. ¶¶ 105). The Terms of Use make clear that adhering to the terms is a condition of using Respondus Monitor: "[b]y using Respondus Monitor, you agree to these Terms in full." (Doc. 12 at Ex. A, Terms of Use at p.1.) The Terms of Use further specify under the heading License Requirements Provided by Respondus that "[a]ll legal issues arising from or related to the use of Respondus Monitor between you and Respondus shall be construed in accordance with the laws of the State of Washington, without regard to conflicts of law principles." (Doc. 12 at Ex. A p.5.) Respondus is a Washington corporation with its principal place of business in Washington. (Compl. ¶ 28.)

The Complaint also explicitly references Respondus' Privacy Policy and attaches the Privacy Policy as Exhibit B to the Complaint. (Compl. ¶¶ 75-77; Compl. at Ex. B.) Plaintiffs allege that the "Privacy Policy is incorporated by reference into the Monitor Student Terms." (Compl. ¶ 75.)

## ARGUMENT

### A.    Legal Standard.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint may not rest on "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*, 556

3

U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When ruling on a motion to dismiss, the court may consider "documents attached to the complaint, documents central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (internal punctuation and citation omitted). "In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (internal quotation and alteration marks omitted). Here, Plaintiffs' Complaint explicitly references the Terms of Use and Privacy Policy, quotes selected portions of those Terms of Use, and attaches the Terms of Use and Privacy Policy as exhibits to the Complaint. (Compl. ¶¶ 50-69, 75-82, 105; Compl. at Exs. A & B.) Thus, this Court can and should consider them when ruling on Respondus' motion to dismiss. *See, e.g.*, *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 947 F. Supp. 2d 922, 925 (N.D. Ind. 2013) ("The websites in this case are clearly 'central to the complaint and are referred to in it,' and so for that reason they are being considered in deciding the pending motion to dismiss.").

### B. Plaintiff Cannot Pursue Claims Under BIPA, An Illinois Law, Because Washington Law Applies.

#### (i) The Illinois Biometric Information Privacy Act.

BIPA is a state-specific statute enacted in 2008 to address the growing "use of biometrics . . . in the business and security screening sectors," which the legislature recognized "appears to

4

promise streamlined financial transactions and security screenings." 740 ILCS 14/5(a). The Illinois legislature found that biometrics "are biologically unique to the individual," and that an "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information," and "deterred from partaking in biometric identifier-facilitated transactions" in the absence of "State law regulating the collection, use, safeguarding, and storage of biometrics." (*Id.* 14/5(c)—(e).)

(ii) <em>Washington Biometric Privacy Legislation.</em>

The state of Washington enacted its own biometric privacy legislation in 2018. The Washington legislature found "that citizens of Washington are increasingly asked to disclose sensitive biological information that uniquely identifies them" and such collection, "without consent or knowledge of the individual whose data is collected, is of increasing concern." Wash. Rev. Code Ann. § 19.375.900. The law, Wash. Rev. Code Ann. § 19.375.020, prohibits any company or individual from entering biometric data "in a database for a commercial purpose, without first providing notice, obtaining consent, or providing a mechanism to prevent the subsequent use of a biometric identifier for a commercial purpose."

(iii) <em>Washington Law Applies To Disputes Between Plaintiffs And<br>Respondus Concerning Respondus Monitor</em>

The Terms of Use provide that "[b]y using Respondus Monitor, you agree to these Terms in full." (Doc. 12 at Ex. A at p.1.) The Terms of Use contain a choice-of-law provision specifying that "[a]ll legal issues arising from or related to the use of Respondus Monitor between you and Respondus shall be construed in accordance with the laws of the State of Washington, without regard to conflicts of law principles." (Doc. 12 at Ex. A at p.5.) As an initial matter, because the contractual choice-of-law provision specifies that Washington law applies "without regard to conflicts of law principles," this Court should apply Washington law without engaging in any

5

further choice-of-law analysis. Because Washington law applies to all disputes between Plaintiffs and Respondus regarding Plaintiffs' use of Respondus Monitor, the Complaint must be dismissed with prejudice because it only alleges claims under BIPA, an Illinois law, and Illinois law does not apply pursuant to the Washington choice-of-law provision.

Even if the Court were to decide that a choice-of-law analysis is necessary, "[a] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits." *Medline Industries Inc. v. Maersk Medical Ltd.*, 230 F. Supp. 2d 857, 861 (N.D. Ill. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Midwest Grain Prods. of Ill., Inc. v. Productization, Inc. & Cmi Corp.*, 228 F.3d 784, 787 (7th Cir. 2000)). Illinois will enforce and give effect to choice-of-law provisions "unless it would *both* violate fundamental Illinois public policy *and* Illinois has a materially greater interest in the litigation than the chosen State." *Midway Home Entertainment, Inc. v. Atwood Richards, Inc.*, No. 98 C 2128, 1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (emphasis added) (citing *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69 (1994)). *See also Smurfit Newsprint Corp. v. Southeast Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004) (parties' choice of law applies unless that choice of law "would *both* violate fundamental public policy *and* Illinois has a materially greater interest in the litigation than the chosen State") (quoting *English Co. v. Northwest Envirocon, Inc.*, 278 Ill. App. 3d 406 (1996)) (emphasis in original); *see also Peregrine Emerging CTA Fund, LLC v. Tradersource, Inc.*, 2008 WL 474369, at *3 (N.D. Ill. Feb. 19, 2008) ("The only time that [Illinois] courts would not apply the express choice of law provision would be in an instance 'where the express choice of law 'would *both* violate fundamental public policy *and* when Illinois has a materially greater interest.'"). Washington law applies here because Plaintiff cannot demonstrate that either factor is met, much less that both factors are met.

(1)     Applying Washington Law does not violate fundamental Illinois public policy.

Applying Washington law does not violate any fundamental public policy of Illinois, especially since Washington has its own biometric privacy law. Illinois courts have held that "the public policy considerations must be of strong and of a fundamental nature to justify overriding the chosen law of the parties" and "a court should not refuse to apply the law of a foreign state, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless enforcement would be of evil example and harmful to its people." *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 759 (2d Dist. 1987).

Illinois courts routinely enforce choice-of-law provisions even when a foreign state's law precludes plaintiffs from pursuing Illinois-specific claims or defenses. *See M. Block & Sons, Inc. v. International Business Machines Corp.*, No. 04 C 340, 2004 WL 1557631, at *7 (N.D. Ill. July 8, 2004) (dismissing Illinois Consumer Fraud and Deceptive Practices Act claim finding no public policy concerns with enforcing New York choice-of-law provision in contract); *Telular Corp. v. Mentor Graphics Corp.*, 282 F. Supp. 2d 869, 871 (N.D. Ill. 2003) (dismissing Illinois Consumer Fraud Act claim due to Oregon choice of law provision); *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000) ("[t]he fact that a different state may provide certain statutory rights for a plaintiff which are not available under the chosen state's law does not invalidate a choice-of-law provision as contrary to public policy"); *Midway Home Entertainment, Inc. v. Atwood Richards, Inc.*, No. 98 C 2128, 1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (granting motion to dismiss since choice-of-law provisions requiring application of New York law barred the Illinois Consumer Fraud Act claim); *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1414 (N.D. Ill. 1996) (finding differences in scope of two state's consumer fraud acts did not sufficiently implicate public policy concerns); *Janice Doty Unlimited, Inc. v. Stoecker*, 697 F.

7

Supp. 1016, 1020 (N.D. Ill. 1988) (enforcing Georgia choice of law provision and refusing to allow claim under Illinois Consumer Fraud Act); *Mell v. Goodbody & Co.*, 10 Ill. App. 3d 809, 813 (1st Dist. 1973) (holding that NY choice of law provision barred claim that loans were usurious under Illinois law and rejecting argument that "giving effect to New York law . . ., which permits an interest rate higher than that allowed in Illinois, would violate Illinois public policy"); *Potomac Leasing Co.*, 156 Ill. App. at 759 (enforcing Michigan choice of law provision despite leaving defendant with no defense under Michigan law).

With respect to BIPA, Respondus is aware of only one court that has held that applying a foreign state's law would be contrary to Illinois fundamental public policy. *See In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) (refusing to enforce California choice of law provision over Illinois law). The court noted that "[b]y its express terms, BIPA manifests Illinois' substantial policy of protecting its citizens' right to privacy in their personal biometric data." *Id.* at 1169. However, the court repeatedly emphasized that if California law were applied, the Illinois policy of protecting its citizens' biometric privacy interests "would be written out of existence." *Id.* The court noted that "California has no law or policy equivalent to BIPA" and "[u]nlike Illinois, California has not legislatively recognized a right to privacy in personal biometric data." *Id.* at 1169-70.

Although Respondus believes that *In re Facebook* was wrongly decided, even the concerns raised by the court in that non-binding case do not exist here. The Illinois policy of protecting biometric privacy interests is not lost if Washington law is applied. Unlike California, the Washington legislature has explicitly recognized a right to privacy in personal biometric data. *See* Wash. Rev. Code Ann. § 19.375.020. Like Illinois, the Washington legislature sought to address the increased use of biometric identifiers in commercial transactions and enacted a law to protect

8

individuals' biometric privacy rights. While the details of the two laws may vary, applying the Washington biometric privacy law instead of BIPA does not violate any fundamental public policy of Illinois. *See Midway*, 1998 WL 7744123, at *3 (enforcing New York choice of law provision even though New York's consumer fraud statute "left the Illinois residents no recourse" and would "deprive Illinois citizens of protection from the alleged harm").

Additionally, the court in *In re Facebook* notes that which state's choice-of-law rules apply "is potentially significant because California and Illinois choice-of-law rules are not identical" as Illinois uses the "pure morals and abstract justice" consideration that California does not. 185 F. Supp. 3d at 1167, n.1. This consideration makes it even clearer that applying Washington law is not "contrary to pure morals and abstract justice" since consumers are not left with no protection of their biometrics at all. Given Washington's own biometric privacy law, the application of Washington law here does not violate any fundamental public policy of Illinois.

> (2)     Illinois does not have a materially greater interest than Washington in the litigation.

Illinois does not have a "materially greater interest" than Washington in this case. Even assuming *arguendo* that Illinois has a generalized interest in protecting its citizens from losing statutory protections, Illinois courts consistently enforce choice-of-law provisions even when plaintiffs are left with narrower or no recourse. *See Midway*, 1998 WL 7744123, at *3; *Potomac Leasing Co.*, 156 Ill. App. at 759. Additionally, Washington has a countervailing interest since Respondus is a Washington corporation and maintains its principal place of business in Washington. (Compl. ¶ 28.)

Unlike in *In re Facebook*, Illinois does not "suffer a complete negation of its biometric privacy protections" if Washington's own biometric privacy law is applied. 185 F. Supp. 3d at 1170. The differences between the two laws is not enough to give Illinois a materially greater

interest and override the parties' choice of law. *See Potomac Leasing Co.*, 156 Ill. App. at 759 (finding differences between Michigan and Illinois consumer protection statutes did not "warrant overriding the parties expressed choice of law"). Since both states have biometric privacy laws and Respondus is a Washington corporation and maintains its principal place of business in Washington, Illinois does not have a materially greater interest in this litigation than Washington.

In short, Plaintiff cannot demonstrate that giving effect to the choice-of-law provision "would *both* violate fundamental Illinois public policy *and* Illinois has a materially greater interest in the litigation than the chosen State." *Midway Home Entertainment*, 1998 WL 774123, at *2 (emphasis added). To the contrary, Plaintiff cannot demonstrate that *either* element required to avoid application of the Washington choice-of-law clause is met here. Thus, the Court must give effect to the choice-of-law provision and dismiss this case.

### C. Plaintiffs Have Alleged That Respondus Complied With BIPA

Even if Illinois law were to apply, Plaintiffs have alleged that Respondus did, in fact, comply with BIPA. Plaintiffs' Complaint attaches and incorporates by reference the Terms of Use, which make clear that adhering to the terms is a condition of using Respondus Monitor: "[b]y using Respondus Monitor, you agree to these Terms in full." (Doc. 12 at Ex. A at p.1.) The Complaint likewise attaches and incorporates by reference the Privacy Policy. (Doc. 12 at Ex. B.) Furthermore, as Plaintiff alleges (Compl. ¶ 75), the Terms of Use explicitly incorporate by reference the Privacy Policy: "The complete Respondus Privacy Policy is available at www.respondus.com/privacy, and we recommend that you review it carefully, particularly if you reside in the European Economic Area…. The section below entitled PRIVACY & SECURITY POLICY, in conjunction with the full Respondus Privacy Policy available at www.respondus.com/privacy, shall govern the privacy policy with respect to Respondus Monitor." Doc. 12 at Ex. A at p.2; *see also* Doc. 12 at Ex. A at p.3.) The Privacy Policy links to the Privacy

10

Center and explains: "Our Privacy Center provides further details about the personal information gathered across various Services, how that information is used, and the legal basis for using the data." (Doc. 12 at Ex. B, Privacy Policy at p.2.) The Privacy Center, in turn, links to a page titled Additional Privacy Information – Respondus Monitor. *See* Ex. A, Privacy Center; Ex. B, Additional Privacy Information – Respondus Monitor.[1] Thus, this document may be considered for purposes of this Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Washington State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co.*, 296 P.3d 821, 829 (Wash. 2013) ("In general, if the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract.") (internal quotation and alteration marks omitted). *See also Amin Ijbara Equity Corp.*, 860 F.3d at 493 n.2; *Brownmark Films*, 682 F.3d at 690; *Fortres Grand Corp.*, 947 F. Supp. 2d at 925.

(i)     *Plaintiffs Have Not Alleged A Violation of Section 15(a)*

Count I alleges Respondus violated Section 15(a) of BIPA, which specifies:

> (a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

---

[1] The versions of the Privacy Center and Additional Privacy Information – Respondus Monitor pages that Respondus is attaching to this brief as Exhibits A and B are the versions that have been in effect since before the various dates Plaintiff alleges she visited Respondus' website in the Complaint through the present. (*See* Compl. ¶¶ 1, 29, 37-39, 42, 44, 47, 51, 69, 75, 88.)

11

However, the documents that Plaintiffs incorporate by reference in their Complaint demonstrate that Respondus *did* have a publicly available retention and destruction policy in effect during the timeframe alleged in the Complaint. The Terms of Use state that "Respondus Monitor will save all recordings of students for a period of one (1) year. Institutions have the ability to retain the data for up to an additional four (4) years." (*See* Doc. 12 at Ex. A at p.4.) The Additional Privacy Information – Respondus Monitor page also explicitly discloses retention and destruction policies:

> The default data retention period for Respondus Monitor is five years. Respondus uses AWS servers which are located in the United States. Upon request, licensing institutions can change the data retention period (e.g. one year). If an institution terminates its license for Respondus Monitor, the institution may request that user data be deleted immediately; alternatively, the data will be retained according to the data retention period, which allows an institution to access that data again if they restore their Respondus Monitor license. The legal ground for storing a user's exam session data on our servers is performance of a contract.

Ex. B at p.2. Because Plaintiffs incorporate these documents by reference in their Complaint, they have alleged that Respondus did, in fact, comply with Section 15(a). Plaintiffs, consequently, have not stated a claim for violation of Section 15(a).

### (ii)    *Plaintiffs Have Not Alleged A Violation of Section 15(b).*

Count II alleges that Respondus violated Section 15(b) of BIPA, which specifies:

> (b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

12

The Terms of Use attached to the Complaint provide the following description of the information collected by Respondus Monitor under the heading License Requirements Provided By Respondus:

> The use of Respondus Monitor will require individual student activity to be recorded, both audibly and visually, during certain assessment sessions. Other data related to individual student activity during assessment sessions may also be recorded by Respondus Monitor, such as, for example, without limitation, time taken by a student to answer specific inquiries on an assessment, etc. The recordings may be stored by Respondus, through its Respondus Monitor Services. Respondus Monitor may analyze the recordings through automated processes to generate additional data derived from the recordings, with the additional data being associated with individual students for use by your Institution in evaluating the recordings. The original recordings and data (as referenced above) may be evaluated by agents of your Institution, including your instructors, to review, assess, and analyze student performance and conduct, among other things. The data and recordings may also be used for investigating student conduct violations. Respondus personnel do not review/analyze the recordings except as may be required to resolve technical problems, improve system performance, modify Respondus Monitor, investigate violations of these Terms, or as may be directed by your Institution.
> …
> Instructors, administrators, and other agents of Institution, may access those recordings and data related to their students through Respondus Monitor.
> …
> Random samples of video and/or audio recordings may be collected via Respondus Monitor and used by Respondus to improve the Respondus Monitor capabilities for institutions and students. The recordings may be shared with researchers (research institutions and/or biometric experts) under contract with Respondus to assist in such research, and the researchers are under written obligation to maintain the video and/or audio recordings in confidence and under terms at least as strict as the terms herein. No personally identifiable information for students is provided with the video and/or audio recordings to researchers…

(Doc. 12 at Ex. A at p.3-4.)

The Additional Privacy Information – Respondus Monitor page includes the following detailed description of the information that Respondus Monitor collects from a student and the purposes for which that information is used:

> A variety of data are automatically processed during an exam session that uses Respondus Monitor. The webcam recording itself goes through an automated "post-

13

processing" step that utilizes facial detection and facial recognition technology to determine: whether the student remained in the video frame, if multiple people appear in the video frame, if the person in the video frame differs from the person who started the exam, and the position of the user's face relative to the webcam recording device.

Respondus Monitor processes other data from the exam session, such as: the date and time the user starts and completes an exam session; the time that each exam question is answered; how much time is spent on each exam question; if/when an answer to an exam question is changed; the quality of the user's internet connection during the exam session (including the time and duration of any internet disconnections); mouse, keyboard and screen activity; the quality of the video recording (in terms of lighting, contrast, movement); and the quality of the audio recording, among other data.

Respondus Monitor continually tracks the applications and processes that are running on the computing device during an exam session.

User data may be aggregated, and then individual user data may be compared to the aggregated data to look for patterns or anomalies, such as whether a user spent an unusually long time answering a question relative to other users.

Summary information for each exam session is made available to the instructor, including a "timeline" where important events are noted (e.g. when an exam question was answered; when an internet disconnection occurred; when multiple people appeared in the video frame). Aggregated data is also provided to the instructor (e.g. the average length of time users spent on an exam question; the average time spent on the entire assessment; the average date/time that users started the exam session).

An overall value is generated for an exam session that helps the instructor determine the risk that exam violations have occurred. Again, these analytics are generated automatically by the Respondus Monitor application.

The legal ground for processing the above-mentioned data is based on Respondus' legitimate need to perform the requirements of the contract.

Depending on the exam settings selected by the instructor, students may be required to show an identification card to the webcam, from which a photo will be taken. The photo image is securely transmitted to the Respondus Monitor server using https, and then stored on the server in encrypted format. Respondus does no further processing or analysis of this data. The legal ground for storing a photo of the identification card is performance of a contract.

Ex. B at p.2.

Because Plaintiffs consented to the Terms of Use, which itself contains extensive disclosures about the information that Respondus Monitor collects and incorporates the other pages that provide even more information about these issues, Plaintiffs have alleged that Respondus did, in fact, provide all disclosures and obtain all consents allegedly required by BIPA.[2] Consequently, Plaintiffs have failed to state a claim for violation of Section 15(b).

>            *(iii)    Plaintiffs Have Not Alleged A Violation Of Section 15(c)*

Count III alleges Respondus violated Section 15(c) of BIPA, which provides that an entity may not "sell, lease, trade, or otherwise profit from" a person's biometrics.  740 ILCS 14/15(c). Plaintiffs' Section 15(c) claim is based on the allegation that "Respondus contracts with Institutions to provide the Respondus Monitor tool to Institutions and receives a fee in exchange," and that Respondus consequently "profits from students' biometric identifiers or biometric information."  (Compl. ¶¶ 146-47).  In other words, Plaintiffs do not allege that Respondus sold biometric identifiers or biometric information, but rather only allege that Respondus profits from selling the Respondus Monitor software that allegedly utilizes biometric technology.

Plaintiffs' interpretation that Section 15(c) represents a blanket prohibition on profiting from products involving biometrics is contrary to both the plain language and legislative history of BIPA.  Section 15(c) prohibits three specifically enumerated verbs: "sell, lease, trade." 740 ILCS 14/15(c).  All three of these terms mean an entity may not transfer a person's biometric data to another in exchange for any consideration.  *See Black's Law Dictionary* 1567 (10th ed. 2014) (defining "sell" as "[t]o transfer (property) by sale"); *id*. at 1026 (defining "lease" as "[t]o grant

---

[2] Respondus denies that BIPA applies to Plaintiffs' claims, denies that Respondus Monitor uses biometric information or biometric identifiers as defined by BIPA, and further denies that BIPA applies to Respondus or to the Respondus Monitor technology in any way.  Respondus makes these arguments here because Plaintiffs have alleged that Respondus Monitor violates BIPA, and Plaintiffs' allegations must be accepted as true for purposes of a Rule 12(b)(6) motion.

the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration"); *id.* at 1720-21 (defining "trade" as "[a] transaction or swap"). The General Assembly's addition of the ancillary phrase "sell, lease, trade, *or otherwise profit from* [biometric data]," 740 ILCS 14/15(c) (emphasis added), must be interpreted using "the cardinal rule of statutory construction known as *ejusdem generis*," which provides that, "when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enters., Inc. v. Cty. of Cook*, 232 Ill. 2d 463, 492, 905 N.E.2d 781, 799 (2009). The phrase "or otherwise profit from" is meant to reinforce the prohibition on selling biometric data for profit, not to completely prohibit separate acts related to the mere possession of biometrics. *See Dean v. Smith*, 2017 IL App. (1st) 170404, ¶ 25, 84 N.E.3d 379, 385; *see also Pooh-Bah Enters.*, 232 Ill. 2d at 492, 905 N.E.2d at 799.

Additionally, BIPA's legislative history makes clear that Section 15(c) was not meant to prohibit biometric transactions. When BIPA was being considered by the Illinois House, Representative Kathleen A. Ryg, a sponsor of BIPA, explained that the impetus for the statute was the bankruptcy of Pay By Touch, and the concern that consumers' biometric data, like in the Pay By Touch database, could be sold in a bankruptcy court auction. 95th Ill. Gen. Assemb., House Proceedings, May 30, 2008, at 249. Ryg recognized the "very serious need of protections for . . . biometric information"—specifically, "prohibiting the sale of biometric information." *Id.*; *see also Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App. (1st) 180175 ¶ 64, 115 N.E.3d 1080, 1094 ("Representative Ryg's remarks establish [] the primary impetus behind the bill."). Representative Ryg's concerns over the sale of Pay By Touch's database demonstrate that the legislature sought to prohibit the sale of biometric data—not the business of using biometric technology.

Moreover, the express purpose of BIPA is to "regulat[e]"—not eliminate—"biometric-facilitated transactions." 740 ILCS 15/5(c), (g). Indeed, the legislature found that biometric technology "appears to promise streamlined financial transactions and security screenings." 740 ILCS 15/5(a). If Section 15(c) were construed to prohibit *any* profitmaking activity related to biometric technology, BIPA's entire statutory framework would be rendered unnecessary. All commercial use of biometric data and biometric technologies in Illinois would cease to occur, and the express purpose of BIPA—to "regulat[e]" "biometric-facilitated transactions"—would be eliminated. 740 ILCS 14/5(c)(g).

The Illinois legislature, however, made clear that BIPA was intended to encourage the "use of biometrics." 740 ILCS 14/5(a) (setting forth BIPA's "Legislative Findings [and] Intent"). The legislature intended to put "these regulations in place" to "further the selection by '[m]ajor national corporations' of 'the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions . . . .'" *Sekura*, 2018 IL App (1st) 180175 ¶ 58, 115 N.E.3d at 1093 (quoting 740 ILCS 14/5(b)). Interpreting Section 15(c) to broadly prohibit a company from profiting from technology that utilizes biometric data would directly conflict with the legislature's express recognition that such technology has significant benefits and that regulating biometric technology will help address the public's hesitancy to use this "promis[ing]" technology. *See* 740 ILCS 15/5(d) & (e).

In short, Plaintiffs' proposed interpretation of Section 15(c)—that it prohibits for-profit biometric technologies—directly conflicts with BIPA's express language and legislative intent and should be rejected. Because Plaintiffs have only alleged that Respondus profits from selling allegedly biometric technology, Plaintiffs fail to state a claim for violation of Section 15(c).

17

*(iv)      Plaintiffs Have Not Alleged A Violation of Section 15(d)*

Count IV alleges that Respondus violated Section 15(d), which provides, in relevant part, that a private entity may not "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifiers or biometric information unless…the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure."  740 ILCS 14/15(d).  Plaintiffs alleges that Respondus violated Section 15(d) by disclosing or disseminating students' information to their respective institutions. (Compl. ¶¶ 157.)

However, as discussed above, the documents that Plaintiffs incorporate by reference in the Complaint repeatedly specify that institutions have access to the data collected by Respondus Monitor.  (*See, e.g.*, Doc. 12 at Ex. A at p.3 ("Instructors, administrators, and other agents of Institution, may access those recordings and data related to their students through Respondus Monitor."); Ex. B at p.2 ("Summary information for each exam session is made available to the instructor, including a 'timeline' where important events are noted (e.g. when an exam question was answered; when an internet disconnection occurred; when multiple people appeared in the video frame). Aggregated data is also provided to the instructor (e.g. the average length of time users spent on an exam question; the average time spent on the entire assessment; the average date/time that users started the exam session).").  And as also explained above, Plaintiffs allege they expressly consented to these terms prior to using Respondus Monitor.  (Compl. ¶¶ 40, 47, 50.)  Thus, Plaintiffs have alleged that they consented to Respondus sharing their information with their respective institutions, and they have not, therefore, stated a claim for violation of Section 15(d).

18

### D. BIPA Does Not Apply to Respondus' Use of Photographs

Even if Illinois law were to apply here, BIPA does not apply to Respondus Monitor because BIPA's plain language expressly excludes both photographs and information derived from photographs. BIPA covers two categories of information: (1) original sources of information about a person ("biometric identifiers," defined as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry") and (2) data derived from those original sources ("biometric information," defined as "information . . . based on an individual's biometric identifier"). 740 ILCS 14/10. BIPA's definition of "biometric identifiers" expressly excludes "photographs," and its definition of "biometric information" excludes "information derived from items or procedures excluded under the definition of biometric identifiers," such as photographs. *Id.*

Here, Plaintiffs' claims that Respondus violated BIPA are based on their allegations that Respondus Monitor captures information from video recordings of students. (*See, e.g.*, Compl. ¶¶ 48, 82-86 (alleging that Respondus Monitor uses students' webcams). The Illinois legislature excluded both photographs and information derived from photographs from BIPA's reach. Because Respondus Monitor only collects photographs and information derived therefrom, Respondus Monitor is outside the scope of BIPA, and Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(6).

### E. The Dismissal Should Be With Prejudice

Each of the three independent bases for dismissal identified above involve issues that cannot be cured through amendment. Thus, the dismissal should be with prejudice. *See, e.g.*, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint."); *Gociman v. Loyola Univ. of Chi.*,

19

No. 20 C 3116, 2021 WL 243573, at *5 n.4 (dismissing complaint with prejudice where dismissal was "based on issues of law and the interpretation of the alleged contract between plaintiffs and defendants" because "pleading additional facts would not save plaintiffs' claim from dismissal").

## CONCLUSION

Plaintiffs' Complaint fails to state a claim for three independent reasons, any of which is alone sufficient to require dismissal with prejudice. First, Washington law applies to Plaintiffs' dispute concerning their use of Respondus Monitor, and they consequently cannot bring claims under BIPA, an Illinois law. Second, even if BIPA did apply, the documents that Plaintiffs incorporate by reference in their Complaint demonstrate that Respondus complied with BIPA. Third, BIPA specifies that it does not apply to the information that forms the basis of Plaintiffs' BIPA claims—photographs and information derived from photographs. Because none of these defects could be cured through amendment, the dismissal must be with prejudice.

Dated: June 4, 2021

RESPONDUS, INC.

By: /s/ Bonnie Keane DelGobbo

Bonnie Keane DelGobbo (bdelgobbo@bakerlaw.com)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606-2841
Telephone: (312) 416-6200

Joel Griswold (jcgriswold@bakerlaw.com)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4088

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that she filed and served the foregoing document via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system.

/s/ Bonnie Keane DelGobbo

4837-9157-2717.1

# EXHIBIT A

This website uses cookies to offer you a better browsing experience. To learn about our use of cookies, see our  Privacy Policy. Click yes to accept.    Yes    No

- Home
- Toggle submenu (Solutions for Higher Education)Solutions for Higher Education
  - LockDown Browser
  - Respondus Monitor
  - Respondus 4.0
  - StudyMate Campus
  - Test Bank Network
- Toggle submenu (Solutions for K-12)Solutions for K-12
  - LockDown Browser
  - StudyMate Campus
  - Respondus 4.0
- Toggle submenu (Partnerships)Partnerships
  - SDK Licensing
  - Technology Partners
  - Publishing Partners
- About Respondus
- News
- Support + Resources
- Webinars
- Events
- Contact
- Customer Login

Skip to main content
About News Webinars Support Contact Customer Login

# Respondus ®

## Assessment Tools for Learning System

Privacy Center



# Privacy Center

- Privacy Center
- Privacy Policy
- Privacy Contact
- GDPR + Privacy Shield
- Data Processing Agreement

## Privacy Center Overview

The privacy of your personal information is important to us. We are committed to providing you with an experience with all our products and services that is safe, secure, and trustworthy.

**Our Privacy Principles**

- **Collect as little personal information as possible.** We aim to collect only the personal information needed to ensure we can offer excellent products and services.
- **Be transparent with the information we collect.** We want our users to understand what information Respondus collects and what we plan to do with it.
- **Limit the sharing of customer information.** We limit the sharing of customer information and provide our users with visibility into the few situations where personal information may be shared or disclosed to organizations outside of Respondus.
- **Build and maintain safe products & services.** We work hard to provide users with a safe and trustworthy place to interact with Respondus, our services, and our partners. Security is always a top priority when it comes to gathering, storing and using personal data.

- **Allow users to easily contact us.** Our company is built upon trust and relationships with users. Whether your concern is related to privacy, security, or a service we offer, a real person from our staff will respond to you in a prompt manner.

**Privacy Across Respondus Applications and Services**

Respondus Inc. offers a range of websites, tools, and services ("Services"). Our Privacy Policy describes the personal information we gather across all Services, and how we use that data. Details about how we process personal data for specific Services is available from the links below:

- Respondus.com
- Studymate.com
- Respondus 4
- StudyMate Author
- StudyMate Campus
- LockDown Browser
- Respondus Monitor
- Respondus Test Bank Network

Personal information may also be gathered by Respondus in other ways, such as when a user obtains technical support or interacts with our sales team. Privacy information about these services and interactions is also available:

- Technical Support
- Help Center
- Sales and Marketing

If you have any questions, concerns or complaints about our Privacy Policy, our practices, or our Services, you may contact us by email at privacy@respondus.com. Our Privacy Policy provides additional ways that you may contact us.

# Respondus

- About
- Support
- Student Help
- Contact
- Privacy
- Trademark
- Twitter

- Respondus for Higher Ed
- LockDown Browser
- Respondus Monitor
- Respondus 4.0
- StudyMate Campus
- Test Bank Network

- Respondus for K-12
- LockDown Browser
- Respondus 4.0
- StudyMate Campus

- Partnerships
- SDK Licensing
- Technology Partners
- Publishing Partners

Copyright © 2021 Respondus, Inc. All rights reserved.

# EXHIBIT B

Case: 1:20-cv-07692 Document #: 49 Filed: 06/04/21 Page 31 of 33 PageID #:394

This website uses cookies to offer you a better browsing experience. To learn about our use of cookies, see our Privacy Policy. Click yes to accept.    Yes    No

- Home
- Toggle submenu (Solutions for Higher Education)Solutions for Higher Education
  - LockDown Browser
  - Respondus Monitor
  - Respondus 4.0
  - StudyMate Campus
  - Test Bank Network
- Toggle submenu (Solutions for K-12)Solutions for K-12
  - LockDown Browser
  - StudyMate Campus
  - Respondus 4.0
- Toggle submenu (Partnerships)Partnerships
  - SDK Licensing
  - Technology Partners
  - Publishing Partners
- About Respondus
- News
- Support + Resources
- Webinars
- Events
- Contact
- Customer Login

Skip to main content
About News Webinars Support Contact Customer Login

# Respondus®

## Assessment Tools for Learning System

Privacy Center
≡

## Privacy Center

- Privacy Center
- Privacy Policy
- Privacy Contact
- GDPR + Privacy Shield
- Data Processing Agreement

<< Return to Privacy Center Overview

### Additional Privacy Information - Respondus Monitor

Your privacy is important to Respondus. Our Privacy Policy explains how we gather and process your personal information. The information below provides additional detail about how personal information is gathered and processed when using Respondus Monitor.

Respondus Monitor is a companion product for LockDown Browser that enables students to record themselves with a webcam and microphone during an online exam. The recordings and other data from the exam session are processed automatically; summary information is provided to the instructor, such as if the student left the video frame during the exam session.

The Institutional Terms of Use must be agreed to by an administrator at the licensing institution prior to enabling the Respondus Monitor tool within the Learning Management System. The Student Terms of Use for Respondus Monitor must be agreed to by users (e.g. students) prior to each use of Respondus Monitor.

Respondus Monitor is an enterprise application accessed from within the institution's Learning Management System (LMS). Respondus Monitor uses a plugin to interact with the LMS's application programming interfaces (APIs). Respondus Monitor doesn't require users (e.g. instructors, students) to create an account since the APIs include "single sign-on" capabilities for authentication purposes. The APIs pass the username to the Respondus Monitor server, which then gets stored on the Respondus server. The legal ground for processing your username for this purpose is based on Respondus' legitimate need to perform the requirements of the contract.

In GDPR terms, the Respondus Monitor service is a "processor" of your personal information; the licensing institution (e.g. university) is the "controller" of the personal information gathered and processed. This means we provide the technology for storing and analyzing the data, but the licensing institution (e.g. instructors; administrators) control the actual use of the data.

A variety of data are automatically processed during an exam session that uses Respondus Monitor. The webcam recording itself goes through an automated "post-processing" step that utilizes facial detection and facial recognition technology to determine: whether the student remained in the video frame, if multiple people appear in the video frame, if the person in the video frame differs from the person who started the exam, and the position of the user's face relative to the webcam recording device.

Respondus Monitor processes other data from the exam session, such as: the date and time the user starts and completes an exam session; the time that each exam question is answered; how much time is spent on each exam question; if/when an answer to an exam question is changed; the quality of the user's internet connection during the exam session (including the time and duration of any internet disconnections); mouse, keyboard and screen activity; the quality of the video recording (in terms of lighting, contrast, movement); and the quality of the audio recording, among other data.

Respondus Monitor continually tracks the applications and processes that are running on the computing device during an exam session.

User data may be aggregated, and then individual user data may be compared to the aggregated data to look for patterns or anomalies, such as whether a user spent an unusually long time answering a question relative to other users.

Summary information for each exam session is made available to the instructor, including a "timeline" where important events are noted (e.g. when an exam question was answered; when an internet disconnection occurred; when multiple people appeared in the video frame). Aggregated data is also provided to the instructor (e.g. the average length of time users spent on an exam question; the average time spent on the entire assessment; the average date/time that users started the exam session).

An overall value is generated for an exam session that helps the instructor determine the risk that exam violations have occurred. Again, these analytics are generated automatically by the Respondus Monitor application.

The legal ground for processing the above-mentioned data is based on Respondus' legitimate need to perform the requirements of the contract.

Depending on the exam settings selected by the instructor, students may be required to show an identification card to the webcam, from which a photo will be taken. The photo image is securely transmitted to the Respondus Monitor server using https, and then stored on the server in encrypted format. Respondus does no further processing or analysis of this data. The legal ground for storing a photo of the identification card is performance of a contract.

Respondus Monitor uses APIs from the LMS to display other personal information, such as grades, within the Respondus Monitor application. This information is obtained in real-time from the LMS (using APIs) and isn't processed or stored by Respondus Monitor.

The default data retention period for Respondus Monitor is five years. Respondus uses AWS servers which are located in the United States. Upon request, licensing institutions can change the data retention period (e.g. one year). If an institution terminates its license for Respondus Monitor, the institution may request that user data be deleted immediately; alternatively, the data will be retained according to the data retention period, which allows an institution to access that data again if they restore their Respondus Monitor license. The legal ground for storing a user's exam session data on our servers is performance of a contract.

Most institutions have an "enterprise" license for Respondus Monitor, which means they pay the entire licensing fee themselves. However, some institutions license Respondus Monitor in a way that requires individual users (i.e. students) to purchase a "seat" directly from Respondus. If you purchase a Respondus Monitor seat directly from us, we collect your name, email address and the course ID for which the seat will be used. The legal ground for processing this information is Respondus' legitimate interest in completing and servicing the financial transaction. No additional use is made of this data. We do not view or store your payment card information. A third party, Paypal, processes customer payment card information when Respondus customers use a payment card to make a purchase on a Respondus website. We recommend you carefully review Paypal's Privacy Policy.

If you have any questions, concerns or complaints about our Privacy Policy, our practices, or our Services, you may contact us by email at privacy@respondus.com. Our Privacy Policy provides additional ways that you may contact us.

<< Return to Privacy Center Overview

Case: 1:20-cv-07692 Document #: 49 Filed: 06/04/21 Page 38 of 38 PageID #:396

# Respondus

- About
- Support
- Student Help
- Contact
- Privacy
- Trademark
- Twitter

- Respondus for Higher Ed
- LockDown Browser
- Respondus Monitor
- Respondus 4.0
- StudyMate Campus
- Test Bank Network

- Respondus for K-12
- LockDown Browser
- Respondus 4.0
- StudyMate Campus

- Partnerships
- SDK Licensing
- Technology Partners
- Publishing Partners

Copyright © 2021 Respondus, Inc. All rights reserved.